1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

KENETH MENA TORRES,

Petitioner,

8

v.

9

CAMILA H. WAMSLEY, et al.,

10

Respondents.

C25-5772 TSZ

ORDER

11

12      THIS MATTER comes before the Court on Petitioner's motion for a temporary

13  restraining order, docket no. 6, which was converted to a motion for a preliminary

14  injunction, <u>see</u> Order (docket no. 15).  Having reviewed all papers filed in support of, and

15  in opposition to, the motion,[1] and having heard the oral arguments of counsel, the Court

16  enters the following Order.

17

18  [1] Respondents (i) Camila H. Wamsley, Seattle Interim Field Office Director, Enforcement and
    Removal Operations, United States Immigration and Customs Enforcement ("ICE"), (ii) Kristi
19  Noem, Secretary of Homeland Security, (iii) United States Department of Homeland Security
    ("DHS"), (iv) Pamela Bondi, Attorney General of the United States, (v) Executive Office for
    Immigration Review ("EOIR"), (vi) Sirce Owen, Acting Director, EOIR, and (vii) the Tacoma
20  Immigration Court (collectively, "Federal Respondents") were granted leave to and did file a
    surreply, docket no. 16.  Petitioner filed a proposed sur-surreply, docket no. 17, and the Court
21  has considered it.  Respondent Bruce Scott, the warden of the Northwest Immigration and
    Customs Enforcement Processing Center, has not appeared in this action or filed any response to
22  Petitioner's motion.

23

ORDER - 1

**Background**

Petitioner Keneth Fernando Mena Torres is currently 20 years old, with no criminal history. *See* Office of Refugee Resettlement ("ORR") Verification of Release (docket no. 13-2 at 4); *see also* Pet. at ¶¶ 2 & 13 (docket no. 1). He arrived in the United States in August 2016 (at the age of 11) as an unaccompanied alien child ("UAC") and "was paroled." *See* Order at 1 (Sept. 9, 2025) (docket no. 13-7 at 1). ORR released him from federal custody "pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008" to his mother Norma Suyapa Torres Avila, who then resided (and still lives) in Oakland, California. *See* ORR Verification of Release (docket no. 13-2 at 4); *see also* Sica Decl. at ¶ 6 (docket no. 11) (indicating that ORR released Petitioner on September 15, 2016); Deed of Trust (docket no. 13-1 at 15) (reflecting a current address in Oakland).

Shortly after placement with his mother, Petitioner filed an application for asylum with United States Citizenship and Immigration Services ("USCIS"). *See* Sica Decl. at ¶ 7 (docket no. 11). On June 13, 2017, removal proceedings in which Petitioner was charged as being inadmissible under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i)[2] were administratively closed in light of Petitioner's pending asylum application. *See* Sica Decl. at ¶¶ 5 & 7 (docket no. 11). Petitioner's asylum application

---

[2] This provision of the INA provides: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

ORDER - 2

1 | remains pending.  Petitioner's mother has been granted asylum, and she has filed an I-730

2 | Refugee Asylee Relative Petition listing Petitioner as the beneficiary, which is also still

3 | pending.  _See_ Notice (Jan. 27, 2020) (docket no. 13-2 at 6).  A complaint seeking a writ

4 | of mandamus in connection with the I-730 petition is now before the Northern District of

5 | California.  _Torres Avila v. Noem_, No. 25-cv-7137 (N.D. Cal.).  On June 27, 2025, the

6 | Office of the Principle Legal Adviser for ICE moved to "recalendar" or reopen

7 | Petitioner's removal proceedings pursuant to President Donald J. Trump's Executive

8 | Order 14159.  Sica Decl. at ¶ 8 (docket no. 11).  The motion was denied.  _Id._

9 |      On August 12, 2025, the Drug Enforcement Agency ("DEA") conducted a

10 | criminal search in California pursuant to a warrant unrelated to Petitioner.  _Id._ at ¶ 9.

11 | During the search, Petitioner was "encountered," taken into custody, and transferred to

12 | the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in

13 | Tacoma, Washington.  _Id._  On August 29, 2025, an immigration judge denied, for lack of

14 | jurisdiction, Petitioner's request to be released on bond.  _See id._ at ¶ 10.  In the

15 | alternative, the immigration judge granted Petitioner's release from custody upon the

16 | posting of a $5,000 bond and compliance with conditions deemed necessary by ICE.  _Id._

17 |      On September 5, 2025, the immigration judge signed a check box form of order

18 | reflecting her oral ruling that Petitioner was subject to mandatory detention, but that, in

19 | the alternative, Petitioner's request would be granted and he would be released from

20 | custody under a bond of $5,000.  _See_ Ex. A to Lambert Decl. (docket no. 12-1).  On

21 | September 9, 2025, the same immigration judge issued an order indicating that Petitioner

22 | "is an applicant for admission and subject to mandatory detention under INA

23 |

ORDER - 3

1    Section 235b2A." *See* Order at 1 (Sept. 9, 2025) (docket no. 13-7 at 1).  Importantly,

2    however, the immigration judge made no finding that Petitioner is currently "seeking

3    admission" to the United States.  *See id.*; *see also* INA § 235(b)(2)(A) (codified as

4    8 U.S.C. § 1225(b)(2)(A)).  Petitioner has appealed the denial of bond to the Board of

5    Immigration Appeals ("BIA").  *See* BIA Filing Receipt (docket no. 13-3).[3]

6          After his request for release on bond was denied, Petitioner filed, pursuant to

7    28 U.S.C. § 2241, the petition for a writ of habeas corpus now pending before the Court.

8    Pet. (docket no. 1).  Petitioner now seeks from this Court preliminary injunctive relief

9    that would give effect to the immigration judge's alternative ruling authorizing his release

10   on a $5,000 bond.  *See* Mot. at ¶ 35 (docket no. 6).  During oral argument, Petitioner's

11   counsel advised the Court that, sometime after Petitioner filed the motion at issue,

12   removal proceedings were "recalendared," that a hearing originally set for October 1,

13   2025, was continued to the end of the month, and that, on October 28, 2025, USCIS plans

14   to conduct an in-custody interview of Petitioner relating to his asylum application.  The

15   attorney for the Federal Respondents further informed the Court that, in 2016, when

16

17

18   _____

19   [3] The Federal Respondents do not contend that Petitioner has failed to administratively exhaust
     his contention that § 1225(b)(2)(A) does not apply to him or preclude his release on bond.  At the
     hearing on October 2, 2025, counsel for the Federal Respondents explained that administrative
20   exhaustion has not been raised as a basis for denying preliminary injunctive relief to Petitioner
     because the immigration judge relied on BIA decisions in concluding that Petitioner was subject
21   to mandatory detention under § 1225(b)(2)(A).  *See* Order at 1 (Sept. 9, 2025) (docket no. 13-7 at
     1) (citing *In re Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), and *In re Yajure Hurtado*, 29 I. & N. Dec.
22   216 (BIA 2025)).

23

ORDER - 4

1   Petitioner was a minor, a warrant issued for his arrest, and that, in August 2025, in

2   connection with his recent detention, another arrest warrant issued post hoc.

3   **Discussion**

4   **A.      Standard for Preliminary Injunction**

5         Preliminary injunctive relief is "an extraordinary remedy" that is "never awarded

6   as of right." _Winter v. Nat. Res. Def. Council, Inc._, 555 U.S. 7, 24 (2008).  A party

7   seeking a preliminary injunction must establish (1) a likelihood of success on the merits;

8   (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) a balancing

9   of equities tips in favor of a preliminary injunction; and (4) an injunction is in the public

10  interest. _Id._ at 20.  The Ninth Circuit has articulated an alternative "sliding scale"

11  approach pursuant to which the first and third _Winter_ factors are analyzed on a

12  continuum; under such standard, a weaker showing on the merits, combined with a

13  stronger demonstration on the balancing test, might warrant preliminary injunctive relief,

14  assuming the second and fourth _Winter_ elements are met.  _All. for the Wild Rockies v._

15  _Cottrell_, 632 F.3d 1127, 1131–35 (9th Cir. 2011).  Under either standard, Petitioner is

16  entitled to preliminary injunctive relief.

17  **B.      Likelihood of Success on the Merits**

18        The question before the Court is whether Petitioner is likely to succeed on the

19  merits of his contention that he is not subject to mandatory detention.  The Court's

20  answer is a resounding "yes."  The INA provision cited by the immigration judge, and on

21  which the Federal Respondents rely, to avoid releasing Petitioner on bond reads:

22

23

ORDER - 5

> [I]n the case of *an alien who is an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (also known as INA § 235(b)(2)(A)) (emphasis added).  The phrases "an alien who is an applicant for admission" and "an alien seeking admission" are **not** synonymous; the first term can describe a noncitizen who for weeks, months, or years is an applicant for admission, whether present in the country or not, whereas the second term describes a current activity, namely standing at the border and asking to be allowed into the United States.  *See Rodriguez Vazquez v. Bostock*, No. 25-cv-5240, --- F. Supp. 3d ---, 2025 WL 2782499, at *20–23 (W.D. Wash. Sept. 30, 2025).

The foregoing interpretation of the words "an alien seeking admission" is consistent with § 1225(b)'s role in governing the process that "begins at the Nation's borders and ports of entry."  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  According to the *Jennings* Court, § 1225(b)(2) serves as a "catchall" for aliens seeking admission who are "not clearly and beyond a doubt" entitled to admission, but not for one of the reasons set forth in § 1225(b)(1), *i.e.* fraud, misrepresentation, or lack of valid documentation.  *Id.*; *see* 8 U.S.C. § 1225(b)(1).  Aliens to whom § 1225(b)(2) applies and who are detained may be temporarily released on parole for "urgent humanitarian reasons or significant public benefit," but they must return to custody when the Secretary of Homeland Security concludes that the purposes of the parole have been served.  *See* 8 U.S.C. § 1182(d)(5)(A).

ORDER - 6

1    In *Jennings*, the Supreme Court recognized that a different provision of the INA,

2    namely 8 U.S.C. § 1226, applies to aliens who are already present in the country, but

3    might be removable because they either were inadmissible at the time of entry or have

4    been convicted of one or more statutorily-enumerated criminal offenses.  *See* 583 U.S. at

5    288.  Section 1226(a) reads as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and
> detained pending a decision on whether the alien is to be removed from the
> United States.  Except as provided in subsection (c) and pending such
> decision, the Attorney General--
>
> (1)    may continue to detain the arrested alien; and
>
> (2)    may release the alien on--
>
>> (A)    bond of at least $1,500 with security approved by, and
>>        containing conditions prescribed by, the Attorney General; or
>>
>> (B)    conditional parole . . . .

8 U.S.C. §§ 1226(a)(1)&(2)(A)–(B).  The *Rodriguez Vazquez* Court properly relied on

the *Jennings* Court's interpretation of § 1226, as well as recent amendments to § 1226(c)

that reflect Congress's similar understanding of the different purposes and scopes of

§§ 1225 and 1226, the standard canons of statutory construction, and the longstanding

practices of executive branch agencies, to conclude that the members of a certified class[4]

were detained pursuant to § 1226(a), and not § 1225(b)(2), and as a result, they were

---

[4] In May 2025, the *Rodriguez Vazquez* Court certified a Bond Denial Class comprised of "[a]ll
noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have
entered or will enter the United States without inspection, (2) are not apprehended upon arrival,
[and] (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or
§ 1231 at the time the noncitizen is scheduled for or requests a bond hearing." *Rodriguez
Vazquez v. Bostock*, 349 F.R.D. 333, 365 (W.D. Wash. 2025).

ORDER - 7

1    entitled to bond hearings.  2025 WL 2782499, at *16–27.  The Court is persuaded by the

2    thorough analysis in <u>Rodriguez Vazquez</u> and concludes that § 1225(b)(2) does not apply

3    to Petitioner.

4         The Federal Respondents' reliance on <u>In re Q. Li</u>, 29 I. & N. Dec. 66 (BIA 2025),

5    and <u>In re Yajure Hurtado</u>, 29 I. & N. Dec. 216 (BIA 2025), to support their view that

6    Petitioner may be held without bond pursuant to § 1225(b)(2), is misplaced.  Both cases

7    are clearly distinguishable.  In <u>Q. Li</u>, the BIA explained that an alien arrested without a

8    warrant while arriving in the United States, paroled, and then served a notice to appear,

9    which terminated the parole, is detained pursuant to § 1225(b)(2)(A) until the conclusion

10   of removal proceedings, and is not eligible for bond.  <u>See</u> 29 I. & N. Dec. at 70–71.  In

11   <u>Yajure Hurtado</u>, a citizen of Venezuela had crossed the border into the United States

12   without inspection and was granted temporary protected status.  <u>Id.</u> at 216.  Shortly after

13   the temporary protected status expired, he was apprehended and issued a notice to appear

14   that charged him as inadmissible under INA § 212(a)(6)(A)(i).  <u>Id.</u> at 217.  An arrest

15   warrant accompanied the notice to appear, but the BIA rejected the notion that the arrest

16   warrant signified detention pursuant to § 1226(a) rather than § 1225(b)(2).  <u>See id.</u> at

17   226–27; <u>see id.</u> at 227 ("the mere issuance of an arrest warrant does not endow an

18   Immigration Judge with authority to set bond").  Unlike the Chinese national in <u>Q. Li</u> and

19   the Venezuelan citizen in <u>Yajure Hurtado</u>, Petitioner was not detained as a result of a

20   notice to appear that revoked his parole; rather, he was apprehended when the DEA

21   executed an unrelated search warrant of premises adjacent to his residence.  <u>See</u> Pet. at

22   ¶¶ 12 & 29 (docket no. 1) (indicating that the warrant concerned individuals living in a

23

ORDER - 8

1  detached apartment located behind Petitioner's and his mother's house and did not

2  implicate Petitioner).  Petitioner's parole[5] was still in effect when he was taken into

3  custody, and thus, he is not now detained pursuant to § 1225(b)(2).

4      Moreover, in contrast to *Q. Li* and *Yajure Hurtado*, this habeas matter involves an

5  unaccompanied alien child.  The statutory provisions governing the detention of UACs

6  are part of the Homeland Security Act of 2002, as supplemented by the William

7  Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (collectively,

8  the "TVPRA").  The TVPRA places responsibility for UACs on the Secretary of Health

9  and Human Services ("HHS").  8 U.S.C. § 1232(b)(1).  The statute requires HHS to

10  "promptly" place UACs "in the least restrictive setting that is in the best interest of the

11  child."  8 U.S.C. § 1232(c)(2)(A).  Prior to his 18th birthday, Petitioner could not have

12  been held in the custody of the Department of Homeland Security.  *See* Pet.'s Reply at 2

13  (docket no. 13) (citing 8 U.S.C. § 1232(b)(1) & 6 U.S.C. § 279).

14      If a UAC reaches the age of 18 and is transferred to the custody of DHS, then

15  DHS must also

16   consider placement in the least restrictive setting available after taking into
account the alien's danger to self, danger to the community, and risk of flight.
17   Such aliens shall be eligible to participate in alternative[s] to detention
programs, utilizing a continuum of alternatives based on the alien's need for
18   supervision, which may include placement of the alien with an individual or
an organizational sponsor, or in a supervised group home.

19

20  _____

21  [5] In addition, Petitioner is not in custody under § 1225(b)(2) because he was not "paroled" pursuant to 8 U.S.C. § 1182(d)(5)(A), *see Jennings*, 583 U.S. at 288; rather, he was released from a secured facility because of his status as an unaccompanied alien child, *see* 8 U.S.C.

22  § 1232(c)(2)(A); *see also* ORR Verification of Release (docket no. 13-2 at 4).

23

ORDER - 9

1  8 U.S.C. § 1232(c)(2)(B).  Petitioner contends that this "age out" provision of the

2  TVPRA also requires his release because confinement at the NWIPC is not "the least

3  restrictive setting available" given the absence of danger he would pose to himself or the

4  community and his low risk of flight.

5      Without addressing the merits of whether the TVPRA requires Petitioner's return

6  to a "least restrictive setting" like placement with his mother,[6] the Court notes that this

7  case is not like _Q. Li_ or _Yajure Hurtado_ because Petitioner is an aged-out UAC with a

8  pending asylum application, which (i) is within the jurisdiction of a USCIS asylum

9  officer (instead of an immigration court operated by EOIR, a component of the United

10  States Department of Justice), _see J.O.P. v. U.S. Dep't of Homeland Sec._, 338 F.R.D. 33,

11  42–43 (D. Md. 2020); _see_ 8 U.S.C. § 1158(b)(3)(C), and (ii) precludes the "recalendared"

12  removal proceedings from advancing forward.  _See_ Settlement Agreement at § III.H

13  (docket no. 199-2), _J.O.P. v. U.S. Dep't of Homeland Sec._, Case No. 8:19-cv-1944 SAG

14  (D. Md. July 30, 2024) ("DHS will join or non-oppose Class Members' motion(s) for a

15  continuance . . . that have been filed or made orally on the record in immigration

16  proceedings in order to await USCIS exercise of Initial Jurisdiction over their asylum

17  application"); _see also id._ at § II.E (defining the Class as "all individuals nationwide who

18  prior to . . . [February 23, 2025]: (1) were determined to be a UAC; and (2) who filed an

19  asylum application that was pending with USCIS; and (3) on the date they filed their

20

---

21  [6] Having not reached the merits, the Court need not consider whether, as the Federal
   Respondents have asserted, Petitioner should be barred from presenting the TVPRA argument
22  because he did not do so in his initial motion and he has not administratively exhausted it.

23

ORDER - 10

1  asylum application with USCIS . . . had a parent or legal guardian in the United States

2  who is available to provide care and physical custody; and (4) for whom USCIS has not

3  adjudicated the individual's asylum application on the merits.").  In other words,

4  Petitioner's asylum application cannot be adjudicated by an immigration judge, and DHS

5  cannot object to the continuance of removal proceedings while the asylum application

6  remains pending before USCIS, which has taken no action on the application in the

7  roughly eight (8) years since it was filed.  Petitioner has a legitimate concern that he will

8  be inappropriately detained for an indefinite and potentially long period of time.  His

9  situation is unique, and the Court concludes that Petitioner is likely to prevail on the

10  merits of his habeas petition.

11  C.        **Irreparable Harm, Balancing the Equities, and the Public Interest**

12         As a result of his confinement at NWIPC, Petitioner is losing the opportunity to

13  continue with his education, faces financial hardships because he is unable to work, and

14  is experiencing more than typical anguish as a result of being separated from his family

15  and friends; Petitioner co-owns a house with his mother, and his inability to contribute to

16  the mortgage might place both him and his mother at risk of becoming homeless.  _See_

17  Pet. at ¶¶ 13 & 52 (docket no. 1) (representing that Petitioner is a student at the College

18  of Alameda, is employed as a manager by Super Duper Burgers in Emeryville,

19  California, and has been "the main source of financial stability [for his family] since the

20  untimely death of his father"); Deed of Trust (docket no. 13-1 at 14–32); _see also Garcia_

21  _Ramirez v. U.S. Immigr. & Customs Enf't_, 568 F. Supp. 3d 10, 29 (D.D.C. 2021)

22  (summarizing the uncontested trial testimony of an expert who opined that "youth from

23

1   ages 15 to 24 are still undergoing critical brain development" and "the experience of

2   detention . . . would be particularly detrimental to this continuing development").

3   Moreover, as an aged-out UAC, Petitioner is entitled to have his asylum interview with

4   USCIS conducted in a non-adversarial setting, *see* *Immigrant Defs. Law Ctr. v. U.S.*

5   *Dep't of Homeland Sec.*, No. CV21-395, 2025 WL 1191572, at *11 (C.D. Cal. Mar. 14,

6   2025), but now, after waiting over eight (8) years for USCIS to take action concerning his

7   asylum application, Petitioner faces the prospect of having his asylum interview

8   conducted while he is in custody and without access to any documents or records that

9   might assist him in demonstrating the requisite persecution or well-founded fear of

10  persecution to qualify as a refugee. *See* 8 U.S.C. § 1158(b) (outlining the conditions for

11  granting asylum to a refugee); 8 U.S.C. § 1101(a)(42) (defining refugee).

12      The Court rejects the Federal Respondents' assertion that Petitioner's harms are

13  merely theoretical or essentially "run of the mill" and therefore insufficient to satisfy the

14  standards for a preliminary injunction. Petitioner has shown that, but for an improper

15  interpretation of the INA, the immigration judge would have released him on a minimal

16  ($5,000) bond, and that he is likely to suffer irreparable harm, including the loss of

17  educational opportunities, potentially devasting economic consequences, and forfeiture of

18  the type of non-adversarial asylum interview for which he has waited almost half his life.

19      The balance of equities weighs in favor of, and the public interest supports, the

20  preliminary injunctive relief that Petitioner has requested. The Federal Respondents'

21  interests in enforcing the immigration laws of the United States do not extend to an

22  improper interpretation of those laws or to detaining a person in violation of those laws,

23

ORDER - 12

1  and the record establishes no basis for believing that Petitioner's release on bond would

2  negatively affect the Federal Respondents in any way.  No showing has been made that

3  Petitioner is a danger to himself or the community, is a flight risk, or is unlikely to appear

4  for future proceedings of which he is given notice.  The public interest is best served by

5  allowing Petitioner to return home and continue to be a productive member of society.

6  **Conclusion**

7      For the foregoing reasons, the Court ORDERS:

8      (1)    Petitioner's motion for a preliminary injunction, docket no. 6, is

9  GRANTED as follows.  Pursuant to the order issued on September 5, 2025, by

10  Immigration Judge Theresa Scala, Ex. A to Lambert Decl. (docket no. 12-1), Petitioner

11  shall be RELEASED from custody, within forty-eight (48) hours of the entry of this

12  Order, under a bond of $5,000 and all other conditions set forth in the immigration

13  judge's order, PROVIDED, however, that "[a]ny conditions ICE deems necessary," *see*

14  *id.*, shall not include any restriction on Petitioner's travel to California, where he resides,

15  or any condition that interferes with his ability to work, attend school, or participate in

16  asylum interviews with USCIS or other asylum-related proceedings.

17      (2)    The preliminary injunctive relief set forth in the Order entered

18  September 22, 2025, docket no. 15, remains in full force and effect.  Until Petitioner is

19  released, the Federal Respondents and NWIPC Warden Bruce Scott are ENJOINED from

20  transporting Petitioner to a detention facility outside the Western District of Washington.

21  The Federal Respondents shall provide Petitioner's counsel and the Court at least

22  seventy-two (72) hours' notice before attempting to deport or remove Petitioner from the

23

ORDER - 13

1    United States.  After Petitioner is released, absent exigent circumstances, the Federal

2    Respondents shall provide Petitioner's counsel and the Court at least twenty-four (24)

3    hours' notice before re-arresting or otherwise detaining Petitioner.

4          (3)      The Clerk is directed to send a copy of this Order to all counsel of record.

5          IT IS SO ORDERED.

6          Dated this 8th day of October, 2025.

7

8          _____
           Thomas S. Zilly

9          Thomas S. Zilly
           United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 14